NISKERN v. UNITED BROTHERHOOD OF CARPENTERS & JOINERS
OF AMERICA.

(Supreme Court, Appellate Division, Second Department. April 15, 1904.)

1. BENEFICIAL ASSOCIATIONS—ACCIDENT—WHAT CONSTITUTES.

The rupture of a blood vessel, caused by the lifting of a considerable weight, together with the fact that the person was at the time suffering with arterial sclerosis, a hardening of the blood vessels, was not an accident," within the meaning of that term, in a certificate of a beneficial association providing for indemnity in case of accidental injury.

Appeal from Trial Term, Westchester County.

Action by Jerome Niskern against the United Brotherhood of Carpenters and Joiners of America. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Odell D. Tompkins, for appellant.

David Swits, for respondent.

WILLARD BARTLETT, J. The plaintiff, as a member of the defendant corporation, which is a mutual benefit association, has recovered a verdict of $200 against it under a provision of its constitution which entitles a member in good standing for a period of two years to receive a disability benefit of that amount upon becoming permanently disabled for life by accidental injuries while working at his occupation as a carpenter, and thereby totally incapacitated from ever again following the trade for a livelihood. The plaintiff, in his testimony, describes the occurrence which is alleged to have resulted in his total incapacity to work any longer as a carpenter, as follows:

"It was in December, 1901. I was helping to build a porch over a back stoop of a house on North Seventh avenue. I think the name was Moore. I was working for myself, and had been employed by the owner. I was putting up the frame and the rafters to it, and I had to climb up a ladder. I didn't have any scaffolding built. And I was taken very dizzy, and came nigh falling off the ladder; and I got down and stayed down quite a while, and made three or four attempts to get as far as I could, and I couldn't make out with it. Then I went and got another man to help finish it. I did not fall off that ladder. I came very near to it. It was not a warm day."

The theory of the plaintiff's case as presented on the trial was that he was suffering in December, 1901, on the occasion referred to in the testimony above quoted, from a hardening of the blood vessels of the body, known in medicine as "arterial sclerosis," and that the strain to which he was subjected in lifting heavy timbers ruptured a diseased blood vessel, and produced a condition unfitting him for further labor at his trade. In my opinion, the testimony of the plaintiff does not suffice to make out an accidental injury within the meaning of the defendant's constitution. It amounts to nothing more than a statement that he suddenly became dizzy while he was engaged in endeavoring to put up the frame and the rafters upon an addition to a house in course

¶ 1. See Insurance, vol. 28, Cent. Dig. §§ 1162, 1166, 1168.

of construction. Nothing that can possibly be called an accident in the ordinary sense of that term appears to have occurred on this occasion. The most that by the most liberal inference can be deemed to have occurred is that he put forth an effort in the performance of his work, which proved too much for him in his physical condition as then existing, and that he was consequently unable to prosecute his work any further. This result was in no sense an accidental injury. In Appel v. Ætna Life Insurance Company, 86 App. Div. 83, 83 N. Y. Supp. 238, the death of the insured was shown to have been due to an injury to the appendix, incurred while riding upon a bicycle, and the Appellate Division in the Fourth Department held that the death was not produced by accidental means within the purview of the policy. Mr. Justice McLennan, who wrote the opinion of the court, pointed out that the plaintiff sustained no fall or shock, came into collision with nothing, went where he chose, selected his route, his wheel being at all times under perfect control, and brought into play only such muscles of the body as he willed; and he concludes that the result of the ride, while extraordinary, in no manner proved that it was accidental. "If the deceased had had a weak heart," he asks, "and had deliberately and in the usual way walked rapidly up a hill, which caused the heart action to stop, could it be said that death was the result of accident?" Another case in point is Southard v. Railway Passengers Assurance Company, 34 Conn. 574, Fed. Cas. No. 13,182, which was an arbitration before Judge Shipman of the United States District Court for the District of Connecticut. The claim was based upon a policy of indemnity against "bodily injuries effected through violent and accidental means." The insured person was injured internally by jumping in haste from a railroad car at a station, and running a considerable distance. This action on his part was not necessary to his safety, but was voluntarily undertaken in order to keep an important engagement to meet another. Judge Shipman held that the injury was not caused by accidental means within the terms of the policy, saying:

"The degree of violence or force is not material; and had the insured, in this case, in jumping from the car, lost his balance and fell, or struck upon some unseen object, and wounded himself, or in running had stumbled, or slipped on the ice, his injury might be attributed to accidental as well as violent means; and, assuming that there was no want of due diligence on his part, his misfortune would have been covered by the policy. But, as I have already stated, the injury which he received was in no sense the result of accident. He jumped from the car with his eyes open, for his own convenience, and not from any perilous necessity. He encountered no obstacle in doing so. He alighted erect on the ground, just as he intended to do. * * * No accident of any kind interfered with his movements, or for an instant relaxed his self-control. All that he claims is that some hours after it was discovered that a muscle in the walls of the abdomen had given way under the strain to which he had voluntarily put it under circumstances free from all peril or necessity. Assuming that this rupture was caused either by his jumping or running, or both, does not help the matter, unless we call running and jumping accidents."

Still another case, even more closely resembling the case at bar, is Feder v. Iowa State Traveling Men's Association, 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212, where the certificate holder, who had visited Denver while suffering from pulmonary con-

sumption, died of a hemorrhage immediately after having endeavored to close the shutters of a window by standing upon a chair and reaching upward for that purpose. There was no evidence that he fell, or slipped, or lost his balance, or that anything occurred which was not contemplated by the deceased, except the rupture of the blood vessel which resulted in his death. The Supreme Court of Iowa held that the rupture was not accidental, within the meaning of the certificate providing for the payment of a benefit in case the death of the certificate holder resulted from an accidental cause. "If a person suffering from some weakness or disease," said Robinson, C. J., "should subject himself to conditions which would not injuriously affect persons in ordinary health, but would be dangerous to him, and injury result, it would not be due to an accidental cause. For example, if a person having a diseased heart should take violent exercise voluntarily, and death should result, the cause would not be accidental."

Many other authorities might be cited, a considerable number of which are referred to in this Iowa case, to show that the misfortune of the plaintiff herein cannot be attributed to an accident or an accidental cause in any legal sense of those terms. I am of opinion, therefore, that there was nothing to go to the jury in the case at bar, and that the complaint should have been dismissed. It may be added that the evidence tending to show that the plaintiff really sustained any rupture of a blood vessel at the time of the alleged accident is extremely weak. His physician, who was called as a witness in his behalf, and who examined him on January 10, 1902—less than six weeks after the occurrence narrated in the plaintiff's testimony—expressed the opinion that the condition in which he found the plaintiff on the occasion of his examination was not caused by any rupture of a blood vessel in the preceding December.

I advise a reversal of this judgment.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.