[S. F. No. 8719. In Bank.—April 16, 1920.]

## WILLIAM OLINSKY, Respondent, v. RAILWAY MAIL ASSOCIATION, Appellant.

[1] ACCIDENT INSURANCE—ACCIDENTAL MEANS OF DEATH—OVER-EXER-TION.—Over-exertion is not an accidental means of death, within an accident insurance policy.

[2] ID.—ACCIDENTAL DEATH—DEATH BY ACCIDENTAL MEANS—DIS-TINGUISHING ELEMENTS.—Where the death is the result of some act, but was not designed and not anticipated by the deceased, though it be in consequence of some act voluntarily done by him, it is accidental death, but where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means.

[3] ID.—INSURANCE AGAINST DEATH FROM ACCIDENTAL MEANS—ADDI-TION TO BY-LAWS—DEFINITION OF ACCIDENTAL DEATH—PREVIOUSLY ISSUED CERTIFICATE NOT AFFECTED.—The adoption by a fraternal beneficial order of a by-law defining the term "accidental death" has no application to an accident insurance certificate issued before the adoption insuring the member against death from accidental means.

[4] ID.—PROOF OF DEATH—BY ACCIDENT ALONE WITHIN ONE HUN-DRED AND EIGHTY DAYS—ADDITION TO BY-LAWS—APPLICABILITY.—The adoption by a fraternal beneficial order of a by-law providing

---

1. Intentional exertion as "accidental means" of injury within accident insurance policy, note, Ann. Cas. 1917A, 88.

2. When death or injury may be deemed to have been caused by accidental means, though the voluntary act of the insured was the primary cause thereof, notes, 7 A. L. R. 1131; L. R. A. 1915E, 127; L. R. A. 1916B, 1021.

upon suitable proof of death by accident alone within one hundred and eighty days after the occurrence of such accident, the beneficiary shall receive the named amount, applies to accidental means of injury rather than accidental death, and has reference to the addition to the by-laws defining accidental death as death within one hundred and eighty days from injuries received by accident alone.

[5] ID. — DEATH FROM HEMORRHAGES FOLLOWING SWIMMING AGAINST RIVER CURRENT—DEATH NOT FROM ACCIDENTAL MEANS.—Under an accident insurance certificate issued by a fraternal beneficial order insuring against death received through accidental means, where the member, who was apparently in perfect health, but had been suffering for some time from tuberculosis, sustained a hemorrhage while swimming up a stream against a strong current, and died within a month as the result of violent and successive hemorrhages, his death did not result from accidental means.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Reversed.

The facts are stated in the opinion of the court.

J. E. White for Appellant.

Edgar D. Peixotto for Respondent.

WILBUR, J.—This is an action brought by the plaintiff, a beneficiary, to recover for death under an accident insurance certificate issued July 27, 1908, to Nathan Olinsky, by the defendant, a fraternal beneficial order. In 1913 certain by-laws were enacted by the association which were in force at the time of the death of the insured, which plaintiff claims modified the certificate. On June 19, 1915, while at a summer resort on the Russian River, the insured, who was then apparently in perfect health, entered the river for a swim. The only witness to the incident testified that he attempted to swim up-stream against a very strong current, and after swimming eight or ten strokes returned to the shore, bleeding from the mouth. The water was not more than four and a half feet deep and the deceased was five feet eight inches in height. There was no evidence of slipping or other similar accident.

5. Rupture of blood vessel as an accident within accident insurance policy, note, 19 L. R. A. (N. S.) 1206.

The hemorrhage continued for some time and was followed by others. The insured was brought to San Francisco, placed in a hospital, and died on July 9, 1915. The cause of his death was the violent and successive 'hemorrhages which, so far as the evidence shows, began at the time mentioned.

The deceased had been suffering for some time with tuberculosis. From June 18, 1914, to July 28, 1914, he was an inmate of a sanitarium for tubercular patients, but had apparently fully recovered. However, the autopsy showed that he was suffering from tuberculosis at the time of his death.

There is no evidence of over-exertion other than the natural inference from the testimony that the deceased swam eight or ten strokes in the face of a very strong current in the river and immediately came ashore with a hemorrhage from the lungs, which in his condition might result from sudden and violent over-exertion. Under the evidence the verdict of the jury must be held to have established the inference that the death was the result of sudden and violent over-exertion at the time in question. It remains to be determined, in the absence of any other evidence as to accidental means of injury, whether this conclusion is sufficient to justify the verdict. It may be conceded that the evidence was sufficient to justify the verdict of the jury under the instruction of the court defining an accident or casualty as follows: "A casualty, something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured." This language being taken from *Richards* v. *Travelers' Ins. Co.,* 89 Cal. 170, 175, [23 Am. St. Rep. 455, 26 Pac. 762, 763], and covering what is known in accident insurance law as an accidental death, as differentiated from a death by accidental means. The jury was justified in finding that the first hemorrhage was accidental in the sense that it was "something out of the usual course of events, and which happens suddenly and unexpectedly and without any design on the part of the person injured," but the insured was doing exactly what he intended to do, and if the contract of insurance is the same as there considered it brings the case within the principle of *Rock* v. *Travelers' Ins. Co.,* 172 Cal. 462, [156 Pac. 1029, L. R. A.

1916E, 1196], where a pall-bearer in lifting a heavy casket down a narrow stairway collapsed and almost immediately died from acute dilatation of the heart due to over-exertion. The court there said: "Rock undertook to carry a heavy casket down a flight of stairs. In carrying it down he did not slip or stumble, nor did the casket fall against him. The entire operation was carried out in precisely the manner intended and designed by Rock. The exertion which he thus assumed was, however, beyond his strength and imposed upon his vital organs a burden which, as it turned out, they could not bear. The result of this exertion was a dilatation of the heart and death. On these facts, which appear in the record without substantial conflict, it cannot be said that the plaintiff sustained the burden which was on her of proving that the death of the insured was caused by bodily injuries effected through accidental means." [1] In other words, over-exertion is not an accidental means of death. It has been so held in the following cases: *Pervangher* v. *Union Casualty & Surety Co.,* 85 Miss. 31, [37 South. 461]; *Niskern* v. *United Brotherhood etc.,* 93 App. Div. 364, [87 N. Y. Supp. 640]; *Appel* v. *Aetna Life Ins. Co.,* 180 N. Y. 514, [72 N. E. 1139]; affirming 86 App. Div. 83, [83 N. Y. Supp. 238]; *Shanberg* v. *Fidelity & Casualty Co.,* 158 Fed. 1, [85 C. C. A. 343; S. C., 19 L. R. A. (N. S.) 1206], (lifting heavy weight); see note to latter case, 19 L. R. A. (N. S.) 1206. The rule is thus stated in 1 C. J. 429, section 73: "An effect which is the natural and probable consequence of an act or course of action cannot be said to be produced by accidental means. This rule has been applied to death or injuries caused by or resulting from ordinary exertions, carrying heavy baggage, lifting heavy weights, contact with a poisonous substance, jumping from a railroad car, reaching out to close a window, resisting arrest, riding a bicycle, stooping, or sunstroke." The distinction between accidental death and death by accidental means is carefully pointed out in *Pledgor* v. *Business Men's Assn. of Texas* (Tex. Civ. App.), 197 S. W. 889, where it is held that death resulting from the lifting of heavy cotton bales was an accidental death, but not a death resulting from accidental means. The uniform rule on the subject is thus well stated in that case: [2] "Where the death is the result of some act, but was not designed and not anticipated by the de-

ceased, though it be in consequence of some act voluntarily done by him, it is accidental death. Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means. In other words, accidental death is an unintended and undesigned result, arising from acts done; death by accidental means is where the result arises from acts unintentionally done." The importance of this distinction in this case arises from the fact that the certificate covers injuries received "through external violent and accidental means which shall wholly and continuously disable the insured. . . .

"3. If death result from such injuries alone within one hundred and twenty days," or, to put it in the language of the authorities, the insurance is against death resulting from "accidental means" and not accidental death.   (See *Postler* v. *Travelers' Ins. Co.*, 173 Cal. 1, [158 Pac. 1022].)   But it is contended by respondent that by-law XVII, added in 1913, amended the contract of insurance so as to cover "accidental death," as defined by the above cases. This section reads as follows: "Accidental death defined. Accidental death shall be construed to be either sudden violent death from external causes, not the result of the member's own vicious conduct, or death within one hundred and eighty days from injuries received by accident alone." The other provisions of the by-laws added after the certificate was issued to the insured, and relied upon by the respondent as a basis of recovery, and as a part of the contract of insurance, is as follows: "Upon suitable proof of the death by accident alone within one hundred and eighty days after the occurrence of such accident of any member of the beneficiary department of this association, the beneficiary named in the certificate of said member shall receive from the benefit fund the sum of four thousand dollars." The pleadings admit that the by-laws were amended as alleged by the plaintiff, but deny that such by-laws were applicable to the decedent. No evidence was introduced to show such applicability, nor were the other by-laws offered in evidence. We are therefore under the necessity of determining the applicability of these by-laws without reference to such other provisions or other evidence which might clarify their meaning. Article XVII defines the term "accidental death." In the certificate of insurance issued to decedent we look in

CLXXXII Cal.—43

vain for the phrase "accidental death." This by-law, there-fore, defining the term "accidental death" has no applica-tion either to the language or to the substantial effect of the certificate issued to the decedent. It may be that at the time of the amendment to the by-laws the appellant was issuing certificates in which the phrase "accidental death" was used, or article XVIII may have been adopted to interpret such phrase used elsewhere in the by-laws or in the constitution. [3] Whether or not this is the fact is not disclosed by the evidence, but it is sufficient to say that the definition has no application to the certificate insuring the decedent, for a definition of "accidental death" could have no applicability to a certificate which did not insure "ac-cidental death" or use the term, nor could such a definition have the effect of changing the terms of such a contract to which it is not applicable. [4] The other amendment to the by-laws that: "On suitable proof of death by *accident alone* within one hundred and eighty days after the occur-rence of such accident," seems to apply to accidental means of injury rather than accidental death, and evidently refers to the provision of by-law XVII defining accidental death as "death within one hundred and eighty days from injuries received by *accident alone.*" In such case it is not the death which is a sudden and unforeseen casualty, but the accidental means which may have occurred one hundred and eighty days before death. If, however, we assume the correctness of the respondent's position that these new provisions of the by-laws apply to the decedent, they must be construed with the terms of the certificate and, when so construed, it is evident that the phrase "accident alone" must refer to the means of injury, for it is such accidents alone that are insured against. The amended by-laws should not be construed to completely change the terms of the cer-tificate concerning the nature of the casualty insured against. If, therefore, the phrase "death by accident alone" in the by-law has not the same legal effect as the terms of the certificate insuring against death by accidental means, when construed with the certificate, the whole con-tract must be so interpreted, although the certificate of the insured provides that it is subject to future by-laws. We hold that by-law XVII does not apply to such certificate, and that the other by-law, even if applicable, does not

change the certificate in so far as the casualty insured is injury or death by accidental means. Whether the death benefit is three thousand dollars, as provided in the certificate, or four thousand dollars, as stated in the by-law, we consider doubtful, but do not deem it necessary to pass on the matter under the very meager and incomplete evidence in the record with reference to such by-laws, believing that additional evidence on a new trial will clarify that matter. [5] The evidence fails to sustain a conclusion that the death of the insured resulted from accidental means, and the instructions of the court to the general effect that the appellant could recover if the death was accidental, and also in giving the jury by-law XVII as a part of the insurance contract were erroneous.

Judgment reversed.

Shaw, J., Olney, J., Angellotti, C. J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred.