**PENDLETON v. PAN AMERICAN LIFE INS. CO.**

**No. 5782.**

Circuit Court of Appeals, Sixth Circuit.

March 18, 1932.

HICKENLOOPER, Circuit Judge, dissenting.

J. W. Howard, of Prestonsburg, Ky. (W. Porter Mayo, of Prestonsburg, Ky., and Geo. B. Martin, of Catlettsburg, Ky., on the brief), for appellant.

Wm. Marshall Bullitt, of Louisville, Ky. (R. Lee Blackwell and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

On July 28, 1919, the appellee issued a policy of insurance for $5,000 upon the life of Edgar Wallace Pendleton, the appellant's intestate. Pendleton paid the first four annual premiums on their due dates, but when the fifth premium became due he was unable to pay it and executed his note therefor to the company. The sixth premium, due July 28, 1924, was not paid, and the policy lapsed. Pendleton died June 23, 1926, and his administratrix, the appellant, claiming that the policy was in effect at the time of his death, brought this suit to recover the full face value thereof.

The policy contained a nonforfeiture provision effective after the payment of premiums for the first three full years. Under this provision, upon default in the payment of any subsequent premium the insured had the right to elect: (1) To accept the cash value of the policy; (2) to have the insurance continued in force for its face amount as term insurance from the date, including the period of grace, that the premium was due, without the right to loan or cash value; or (3) to purchase paid-up insurance payable at the same time and on the same conditions as the policy, but without the right to loan or cash value. It was further stipulated in this provision that if the insured failed within one month (thirty days) from the date of default to surrender his policy and elect to accept therefor the cash surrender value or paid-up insurance as provided in options (1) and (3), then option (2) for extended insurance should become operative, and the insurance would be continued for such term as the cash value of the policy as of the date of default would purchase, "cash value" being defined as the reserve at the date of default, less a surrender charge of not more than 2½ per cent. of the amount insured by the policy, and less any unpaid premium or existing indebtedness to the company on the policy.

It is admitted that the insured did not surrender his policy or make an election thereunder within thirty days from the date of default; that the reserve as of that date was $216.80; that the amount of the insured's indebtedness to the company with interest was $103.50; and that the surrender charge, according to the provisions of the policy, was $36.80. Though not complaining of the judgment against it in the court below, the appellee contends that all of the terms of the nonforfeiture provision were effective and enforceable, with the result that upon the failure of Pendleton to make an election

within thirty days from the date of default the cash value of the policy as of that date, $76.50 (the reserve less the indebtedness and surrender charge), was converted into extended insurance which expired May 2, 1926, fifty-one days before Pendleton's death. The appellant contends that the provision was inoperative in so far as it authorized the deduction of a surrender charge but was effective for the purposes of extended insurance, and that consequently the amount available for such insurance at the date of default was sufficient to extend and did extend the policy beyond the date of the insured's death. The trial court held that inasmuch as section 659 of the Kentucky Statutes forbade the deduction of a surrender charge, the nonforfeiture provision was wholly void and appellant was remitted to her rights under the statute, and gave judgment against appellee for such paid-up insurance as the reserve less the insured's indebtedness would purchase, amounting to $300.

The Kentucky Statutes, § 659, provide that upon default in the payment of a premium on a policy, after three full years' premiums in cash have been paid, the policy "shall be binding upon the company for the amount of paid-up insurance, which, according to the company's published tables of single premiums, the net value of the policy on such anniversary, and all dividend additions thereon, computed" according to section 653 of Kentucky Statutes, "will purchase as a net single premium for life or endowment insurance maturing and terminating at the time and in the manner provided in the original policy." While this statute also provides that an insurance company "may contract with its policy-holders to furnish, in lieu of the paid-up insurance, * * * any other form of life insurance lawful in this commonwealth, of not less value," it is plain that it does not require an insurance company to issue any form of insurance upon the lapse of a policy except paid-up insurance.

The Court of Appeals of Kentucky has undoubtedly held that the statute forbids the deduction of a surrender charge. This holding we accept as a binding construction of a state statute. We cannot, however, assent to the view that the court has also held that the statute requires the issuance of extended insurance. In Penn's Mutual Life Insurance Co. v. Barnett's Adm'r, 124 Ky. 266, 96 S. W. 1120, 99 S. W. 228, the suit was for paid-up insurance. There was no statute in the state, at the time the policy there involved was is-

sued, requiring life insurance companies to issue paid up insurance. The insurance company, however, contracted to issue such insurance, but according to a practice deducted a surrender charge from the amount available for purchasing it. The policy did not authorize the deduction, but provided that upon its lapse, after a number of premiums were paid, the full reserve was to be accounted for in paid-up insurance. The court held that the contract did not authorize the deduction, and in the absence of any statute to that effect the company had no right to make it but was required to apply the full reserve to paid-up insurance. In Peak v. Mutual Benefit Life Ins. Co., 172 Ky. 245, 189 S. W. 195, 197, the policy provided for three options: (1) Cash surrender value; (2) paid-up insurance; and (3) extended insurance if neither of the first two options was exercised. It also provided for a surrender charge under all options. Suit was brought to recover extended insurance, and the insurance company contended that it had contracted for a net reserve on a 3 per cent. basis, which, with the deduction of a surrender charge, was more favorable to the insured than the 4 per cent. reserve permitted by statute, and therefore the provision came within the statutory proviso "of not less value." The court denied the contention, holding that the insured was entitled to a "settlement under the terms of his policy with this void provision [the surrender charge provision] eliminated," citing the Barnett Case. The court quite obviously misconceived the import of the Barnett Case, for, as we have already pointed out, that case dealt with neither a statute nor extended insurance. Prudential Insurance Co. v. Ragan, 184 Ky. 359, 212 S. W. 123, and Security Life Insurance Co. v. Watkins, 189 Ky. 20, 224 S. W. 462, follow the Peak Case, quoting therefrom to the effect that a provision for a surrender charge is void, and that an insured is entitled to a settlement under his policy with that provision eliminated.

It is apparent from a consideration of these Kentucky cases that the courts of that state have not construed the statute as requiring the issuing of extended insurance, but as merely forbidding the deduction of a surrender charge. As heretofore stated, we accept that ruling as a binding construction of a state statute. That being done, we come to the second pronouncement of the court in the Peak Case—applied also in the Ragan and Watkins Cases—that although a clause in a provision for extended insurance authorizing the deduction of a

surrender charge is invalid, the provision is otherwise enforceable. This holding involves nothing more than the construction of a contract, a question of general law which this court will pass upon as such. See Carpenter v. Providence Ins. Co., 16 Pet. (41 U. S.) 495, 10 L. Ed. 1044; Gordon v. Ware Nat. Bank (C. C. A.) 132 F. 444, 67 L. R. A. 550; and Russell v. Grigsby, 168 F. 577 (6 C. C. A.), the latter unaffected on this point by the reversal in 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863. Upon that question we cannot doubt that where a consideration for a contract obligation, otherwise nonexistent, is unenforceable because contrary to law, the obligation itself is unenforceable. We conclude, therefore, that the lower court was right in holding that the nonforfeiture provision was void, and that appellant's rights were fixed by the statute, under which the policy was binding upon appellee in the amount of paid-up insurance that the "net value" thereof would purchase "as a net single premium for life." Whether in arriving at the net value the court rightly deducted the indebtedness from the reserve we need not decide, since error is not assigned to that ruling so far as it affected the paid-up insurance.

The judgment is affirmed.

HICKENLOOPER, Circuit Judge (dissenting).

I am unable to concur in the decision of the majority. I agree that extended insurance, although it may very properly be regarded as one type of "paid-up insurance," that is, paid-up term insurance for the face of the policy, is not to be regarded as within the meaning of these words as used in section 659, Kentucky Statutes. I also agree, of course, that judicial construction of a policy of insurance is a matter of general law upon which the decisions of the state courts are not binding upon the federal courts; and that the statute does not require the issuance of extended insurance. What does seem to me controlling, however, is that the Court of Appeals of Kentucky has construed section 659 as requiring the elimination from the policy provision for such extended insurance only of the requirement for deduction of a surrender charge, and that, in so far as this is a definition of the scope and effect of the statute, it is a construction of such statute which is binding upon the federal courts whether those courts are in agreement with the processes of reasoning of the state courts or not.

New York Life Insurance Co. v. Cravens, 178 U. S. 389, 395, 20 S. Ct. 962, 44 L. Ed. 1116.

Subdivision 4 of section 659 provides that "any condition or stipulation in the policy of insurance or elsewhere contrary to the provisions of this section and any waiver of such provisions by the assured, shall be void." The effect of this provision has been defined as eliminating only so much of the policy provisions as is in contravention of the statute. The policy provides that in case of default in payment of premiums the insured may have the option "(a) to accept the cash value of the policy, or (b) to have the insurance continued in force for its face amount as term insurance * * *, or (c) to purchase paid-up life insurance * * *." The next paragraph then defines the "cash value" as the reserve at the date of default "less a surrender charge of not more than two and one half per cent. of the amount insured * * *." Regarded as a definition of the "cash surrender value," this is a valid provision under the statute; but the difficulty arises under the next provision: "The term for which the insurance will be continued or the amount of paid-up policy will be such as the said cash value will purchase as a net single premium at the attained age of the insured * * *." This latter provision only is in direct contravention of the statute, at least in so far as, by reference, it authorizes the deduction of a surrender charge.

In Peak v. Mutual Benefit Life Ins. Co., 172 Ky. 245, 189 S. W. 195, Prudential Ins. Co. v. Ragan, 184 Ky. 359, 212 S. W. 123, and Security Life Ins. Co. v. Watkins, 189 Ky. 20, 224 S. W. 462, while not construing the statute as requiring the issue of extended insurance, the court expressly held that where provision was made for extended insurance (in all respects similar to that in the present case) the insured was entitled, by virtue of the statute, and not as a matter of judicial construction of the contract, to have the policy enforced with only the objectionable provision for deduction of the surrender charge eliminated. If the statute as construed by the highest court of the state be read into each policy subsequently issued, this effect would result. The reserve, in the present case, calculated as required by the statute, would then have been sufficient to purchase extended insurance for a period beyond the date of death.

To hold that, because the statute does not affirmatively require the issue of extended insurance, the use of the "cash value" instead of net reserve as the measure of the term in

the purchase of such extended insurance is permissible, the effect of our present decision, seems to me not only to contravene the construction of such statute, already the established law and announced public policy of the state, but also to negative the general intent that other types of life insurance, not required by the statute, but offered, shall be of "equal value," that is, predicated upon the same purchasing power of the net reserve. It does not seem to me a hardship upon the company to read this requirement (known to the company) into the policy, and to hold that the insured, or his beneficiary, is entitled to that construction of its terms which would result from excising those words only which violate the statutory requirements. This is but requiring the company, in its contract representations to its policyholders, to comply with the statutory requirements, while preserving all other portions of the agreement, as, it seems to me, good faith and fair dealing, and compliance with the law, should require.